**HALLMARK CLINIC and Harold R. Hoke, M.D., Appellants,**

**v.**

**NORTH CAROLINA DEPARTMENT OF HUMAN RESOURCES et al., Appellees.**

No. 74–2322.

United States Court of Appeals, Fourth Circuit.

Argued May 7, 1975.

Decided Aug. 4, 1975.

Roy Lucas, Washington, D. C. (Adam Stein, Chapel Hill, N. C., on brief), for appellants.

William F. O'Connell, Asst. Atty. Gen., N. C. Dept. of Justice (Rufus L. Edmisten, Atty. Gen., N. C. Dept. of Justice, on brief), for appellees.

Before BOREMAN, Senior Circuit Judge, and RUSSELL and FIELD, Circuit Judges.

**1316**

PER CURIAM.

Hallmark Clinic, and its proprietor, Harold R. Hoke, M.D., successfully obtained an injunction, pursuant to 42 U.S.C. § 1983, restraining enforcement of a regulation[1] of the North Carolina Department of Human Resources which required any abortion clinic not associated with a hospital to enter into an emergency transfer agreement with a hospital which could be reached by transfer of clinic patients within fifteen minutes. In granting the injunction, the three-judge federal district court characterized the regulation as a "thinly disguised effort to evade *Roe* and *Doe*," *Hallmark Clinic v. North Carolina Department of Human Resources*, 380 F.Supp. 1153, 1158 (E.D.N.C.1974), but declined to award attorneys' fees to the prevailing parties. The plaintiffs-appellants appeal only from that part of the lower court's decision which refused to award them counsel fees. The defendants do not appeal from any part of the order.

Subsequent to the Supreme Court decisions in *Roe v. Wade*, 410 U.S. 113, 93 S.Ct. 705, 35 L.Ed.2d 147 (1973), and *Doe v. Bolton*, 410 U.S. 179, 93 S.Ct. 739, 35 L.Ed.2d 201 (1973), the North Carolina General Assembly enacted a new statute[2] concerning the performance of abortions in the state which legalized the performance of abortions by licensed doctors in a clinic or hospital certified as suitable by the Department of Human Resources. The North Carolina Medical Care Commission, statutorily charged with the implementation of certification, promulgated a regulation upon the recommendation of an *ad hoc* committee of experts in the field. That regulation, which was disapproved and voided by the district court, apparently committed the award of transfer privileges to the sole discretion of the hospital authorities. Hallmark Clinic was provisionally certified to operate upon condition that it obtain a transfer agreement within ninety days. The Clinic was unable to reach such an agreement with the only available hospital. In fact, Dr. Hoke lost his staff privileges at that institution during the ninety-day period. Faced with imminent shutdown of the Hallmark Clinic, the Clinic and Dr. Hoke sued to enjoin enforcement of the regulation.

Aside from challenging the constitutionality of the regulation and the discretion it vested in hospital administrators, the complaint asserted that the defendants were placed on notice by the language of *Roe v. Wade, supra*, of the unconstitutionality of the regulation, and that its promulgation, in the face of that decision and of actions taken concerning similar regulations by courts and administrative authorities in other states, must have been in bad faith. The plaintiffs questioned in the district court and on appeal the motives of the hospital authorities who withdrew Dr. Hoke's staff privileges and failed to permit emergency transfers from the Clinic. The defendants maintain that the regulations were realistic, reasonable requirements to effectuate the intent of the statute, and vigorously resist any attempt to impute to them the conduct of the hospital authorities.

On appeal, the sole question here is the challenge by plaintiffs of the denial of attorneys' fees. They maintain that an award of fees is proper because the defendants acted in bad faith and because the plaintiffs acted as "private attorneys general" in vindicating the rights of women in North Carolina to obtain first-trimester abortions untrammeled by state interference. The defendants argue that the Eleventh Amendment precludes the award of fees against the state; also that such an award is unjustified on the facts under either rationale advanced by the plaintiffs-appellants.

■ We are in agreement with the views expressed by the district court in refusing to grant attorneys' fees.

1. III.B.8.b, Rules and Regulations Governing the Certification of Clinics for the Performance of Abortions, North Carolina.

2. N.C.Gen.Stat. §§ 14-44, 14-45.

It is clear that we cannot award attorneys' fees against the Department of Human Resources, which is one of North Carolina's principal executive departments, N.C.Gen.Stat. § 143B–6. *See Edelman v. Jordan,* 415 U.S. 651, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974); *Jordon v. Gilligan,* 500 F.2d 701 (6th Cir. 1974). Whether we may award attorneys' fees against the individual defendants is governed by equitable discretion and considerations of fairness. *See Hall v. Cole,* 412 U.S. 1, 5, 93 S.Ct. 1943, 36 L.Ed.2d 702 (1973). . . . Although doubtless unsophisticated in their grasp of the right of privacy, we think the named individuals, in attempting to implement new statutes themselves responsive to new constitutional doctrine, cannot be fairly characterized as guilty of "bad faith." [Citations omitted.] *Hallmark Clinic v. North Carolina Department of Human Resources,* 380 F.Supp. 1153, 1159–1160 (E.D.N.C.1974).

Although the lower court did not explicitly discuss the award of counsel fees on the "private attorneys general" theory, it apparently rejected that approach when it found that the award of fees was governed by "equitable discretion." This rejection of the "private attorneys general" theory is validated by the decision of the Supreme Court in *Alyeska Pipeline Service Company v. The Wilderness Society,* 421 U.S. 240, 95 S.Ct. 1612, 44 L.Ed.2d 141 (1975). The Court there held that in the absence of a Congressional mandate to the contrary, the traditional "American rule" continues to govern the award of attorneys' fees. Since no Congressional enactment supports an award of fees in this instance, the district court correctly based its determination on its "equitable discretion." Finding no "bad faith" on the part of the defendants, the district court properly declined to award attorneys' fees.

The judgment of the district court insofar as it is challenged on appeal is affirmed.

*Affirmed.*